UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE M. HALL,

    Plaintiff,

v().                                               Hon. Sally J. Berens

COMMISSIONER OF                  Case No. 1:20-cv-623
SOCIAL SECURITY,

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **reverse** the Commissioner's decision and **remand** the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

### Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards in making his decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed an application for DIB on August 22, 2017, alleging that she became disabled as of July 11, 2017, due to degenerative disc disease and irritable bowel syndrome (IBS). (PageID.95.) Plaintiff was age 40 at the time of her alleged onset date. (*Id.*) She had graduated

from high school and had previous employment as an accounts payable clerk for an automotive manufacturer and for an assisted living management company. (PageID.208.) After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge (ALJ).

ALJ Sarah Smisek conducted a hearing on March 5, 2019, and received testimony from Plaintiff and Shannon E. Smith, an impartial vocational expert. (PageID.73–93.) On April 22, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled from her alleged onset date through the date of the decision. (PageID.56–67.) The Appeals Council denied Plaintiff's request for review on May 12, 2020 (PageID.41–43), making ALJ Smisek's April 22, 2019 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on July 9, 2020.

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the cervical and lumbar spine; and (2) degenerative joint disease of the right shoulder status post-surgery. (PageID.58.) The ALJ found Plaintiff's IBS to be a non-severe impairment. (*Id.* at 58–59.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.59–60.)

With respect to Plaintiff's RFC, the ALJ determined that she retained the capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she:

> could never climb ladders, ropes, or scaffolds, and other postural movements would be occasional. The claimant's work must allow for a sit/stand option, defined as work that could be done in both, the sitting, and standing position so that the change in position would not cause the claimant to go off task. She would require the option to change position every thirty minutes and there would be only occasional reaching overhead with the right upper extremity.

(PageID.60.)

At step four, the ALJ determined that Plaintiff retained the RFC to perform her past relevant work as an accounts payable clerk. (PageID.65.) The ALJ also found that found that an individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of insurance clerk, payroll clerk, and mortgage account clerk, 1,870,000 of which existed in the national economy. (PageID.66–67.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises three issues in her appeal: (1) the ALJ erred by limiting Plaintiff to unskilled work and then finding that she was capable of performing semi-skilled and skilled jobs; (2) the ALJ's reliance upon a State agency psychologist's opinion and rejection of all other medical opinions for her RFC is not supported by substantial evidence and is contrary to law; and (3) the ALJ's finding that the medical opinion of Plaintiff's treating provider, Scott Kleinert, P.A.-C, was unpersuasive is not supported by substantial evidence. (ECF No. 18 at PageID.1062.)

**I.      Opinion Evidence (issues (2) and (3))**

Because Plaintiff filed her application after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. § 404.1520c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §

5

404.1520c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* § 404.1520c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* § 404.1520c(1)–(5). The ALJ must explain his or her consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* §§ 404.l520c(b)(2), (3) 416.920c(b)(2), (3). The regulation defines "supportability" and "consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(1)–(2).

The ALJ is to conduct this analysis with regard to all opinions, but is not required to give controlling weight to an opinion from any particular source. "Thus, an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by evidence in the record." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015) (citing 20 C.F.R. § 404.1527).

The record in this case included two medical opinions, one from State agency reviewer Shamika Hall, Ph.D., and a second one from Plaintiff's treating provider, Scott Kleinert, P.A.-C. Regarding Dr. Hall's opinion, the ALJ wrote:

> The undersigned considered the medical opinion set forth by Dr. Shamika Hall on December 4, 2017. (1A). Dr. Hall indicated that the claimant does not allege any mental health issues but that she reports difficulty completing tasks, concentrating,

6

> and handling stress and change. There is no reported history of psychiatric hospitalizations, crisis intervention at the emergency room or any suicidal or homicidal psychotropic medication use, or psychotherapy. Based on the medical evidence of record, she indicates that there is no evidence to support a listing or a medically determinable mental impairment. (1A). Given the medical evidence of record, the undersigned finds the opinion of Dr. Hall persuasive.

(PageID.64.) The ALJ evaluated PA Kleinert's opinion as follows:

> The undersigned considered the vocational assessment noted by Scott Kleinert, PA-C on August 23, 2017, from Partners in Family Health. Mr. Kleinert indicated that he agrees with the claimant and that he does not really feel that she can hold down a regular occupation, as she is unable to sit and stand for long periods. He also indicated that the claimant's pain medications affect her mentally. (7F/2, 12F/2). The undersigned also considered his medical source statement. (10F/1). He opined that the claimant could sit, stand and walk less than two hours within an 8-hour workday due to pain. He also indicated that the claimant needs a job that would permit shifting positions at will from sitting, standing, and walking and that she must walk every thirty minutes for at least 10 minutes at a time. (10F/2, 14F/2). He indicated that she could rarely lift less than 10 pounds an [sic] never more than 10 pounds and that she could never twist, stoop, crouch, squat, or climb stairs or ladders. (10F/4). He further opined that she has significant limitations with reaching, handling or fingering. While the medical evidence clearly shows positive findings on examination and on imaging, the claimant underwent various treatments that help to manage the pain with some success in physical therapy. Therefore, the undersigned finds this opinion nonpersuasive as it is far more restrictive than what is supported by the medical evidence and daily life activities of the claimant.

(*Id.*)

Plaintiff contends that the ALJ's finding that Mr. Kleinert's opinion was unpersuasive was not supported by substantial evidence. Plaintiff first contends that, while the ALJ accurately found that Plaintiff received conservative treatment for her leg and lower back pain, including steroid injections and a selective nerve root block, which brought her some relief (PageID.63), the ALJ ignored that the relief was only temporary. (ECF No. 18 at PageID.1074.) Plaintiff's hearing testimony established that the primary issue affecting her ability to work on a sustained basis was pain originating from the lumbar region of her back that radiates down her right leg into her feet. (PageID.79–82.) Plaintiff received a series of epidural steroid injections and selective nerve root

7

blocks on the right side at L3/4, L4/5 that provided relief ranging from 75-90% for periods of time ranging from two-to-eight weeks. (PageID.438, 443, 458, 501.) By October 2018, Plaintiff reported no relief from these treatments. (PageID.933.)

On August 13, 2018, Plaintiff reported 40 percent worsening of her low back and right lower extremity radicular pain, which she rated 8/10. On examination, the physician's assistant observed diminished sensation at L5 and positive straight leg raising on the right. The physician's assistant noted that Plaintiff's conservative care had been "somewhat maximized" and recommended a surgical evaluation with Dr. Stubbart. (PageID.1003–05.) On October 29, 2018, Plaintiff saw neurosurgeon Justin Clark, M.D., for a second opinion. Dr. Clark noted that Plaintiff appeared to have pain in both an L5 and S1 distribution on the right, but saw no obvious compression of the nerve roots. He thought that surgical intervention of a microdiscectomy would have a low likelihood of success and recommended that she be evaluated for a pain stimulator. (PageID.821.) On October 31, 2018, Plaintiff saw Dr. Stubbart, who noted that an October 1, 2018 MRI showed disc bulging at L5-S1 with a shallow central protrusion without nerve encroachment. Dr. Stubbart agreed with Dr. Clark that there were no predictable surgical options and thought that a spinal stimulator was a reasonable consideration. He prescribed pool therapy and a home exercise program. (PageID.1012–13.) While the ALJ found that Plaintiff received relief from various treatments, she failed to acknowledge that, at least with regard to Plaintiff's leg and lower back pain, Plaintiff received only temporary relief from her symptoms that appeared to diminish over time. *See Savage v. Comm'r of Soc. Sec.*, No. 4:19 CV 1208, 2020 WL 2309263, at *7 (N.D. Ohio Apr. 22, 2020), *report and recommendation adopted*, 2020 WL 2308459 (N.D. Ohio May 8, 2020) (noting that the ALJ's statements that the plaintiff obtained a "good response" or "good symptom control" from her treatments was inaccurate, as the plaintiff "consistently reported limited,

temporary relief from her treatments and, on one occasion, no relief at all"); *Corrigan v. Berryhill*, No. 17-10856, 2018 WL 4102850, at *9 (E.D. Mich. Aug. 7, 2018), *report and recommendation adopted*, 2018 WL 4095059 (E.D. Mich. Aug. 28, 2018) ("While it is true that Corrigan achieved some immediate and temporary relief from her conservative treatment, it seems incongruous to characterize that treatment as "generally successful" when the end result was a spinal fusion surgery (which itself was not fully effective in treating Corrigan's back issues)."). Accordingly, the Court concludes that remand is appropriate for reevaluation of Mr. Kleinert's opinions in light of the temporary and diminishing relief Plaintiff received from her conservative treatments for her back and leg pain.

Plaintiff also argues that the ALJ failed to explain why her daily activities were inconsistent with Mr. Kleinert's opinion. She notes that the activities the ALJ identified are not necessarily inconsistent with an inability to perform sedentary work on a sustained basis. (ECF No. 18 at PageID.1074–75.) *See Brooks v. Social Sec. Admin.*, 430 F. App'x 468, 480 (6th Cir. 2011) (concluding that the ALJ failed to explain how the plaintiff's daily activities "directly refuted" the doctor's limitations where none of the plaintiff's activities necessarily involved functions beyond the doctor's stated restrictions). Defendant responds that, because the ALJ identified how Plaintiff's daily activities were inconsistent with her reported symptoms earlier in her decision, the ALJ was not required to refer to them again in discussing the opinion evidence. (ECF No. 19 at PageID.1089–90.) While the ALJ did discuss Plaintiff's daily activities when evaluating her subjective symptoms, she merely stated that Plaintiff's "level of activity is not consistent with someone alleging such severe and debilitating mental and physical symptomatology." (PageID.63.) This statement provides no insight into why the ALJ considered Plaintiff's fairly limited activities inconsistent with the limitations Mr. Kleinert assessed, such as the need for

9

breaks every 30 minutes to allow Plaintiff to walk for about ten minutes. *See Inlow v. Comm'r of Soc. Sec.*, No. 1:17-cv-163, 2018 WL 3425288, at *7 (S.D. Ohio July 16, 2018), *report and recommendation adopted*, 2018 WL 3673095 (S.D. Ohio. July 16, 2018) (ALJ failed to properly evaluate treating physician's opinion where he did not explain why the plaintiff's relatively limited range of daily activities were inconsistent with the doctor's assessed limitations). Accordingly, substantial evidence does not support the ALJ's determination that Mr. Kleinert's opinion is inconsistent with Plaintiff's daily activities. Remand is thus appropriate to allow the ALJ to articulate her basis for this finding.

In a related argument, Plaintiff contends that, having found Mr. Kleinert's opinion nonpersuasive, the ALJ was left with no medical opinion regarding Plaintiff's physical limitations because Dr. Hall's opinion addressed only mental impairments/listings. Plaintiff contends that the ALJ thus erred by acting outside the scope of her expertise when she interpreted raw medical data. Plaintiff further argues that the ALJ erred by determining Plaintiff's RFC without obtaining a functional capacity opinion from a medical source. The Court disagrees. First, the Sixth Circuit has held that an ALJ does not impermissibly interpret raw medical data by using a radiologist's findings to formulate a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726–27 (6th Cir. 2012) (concluding that the ALJ was not required to obtain a medical expert to interpret x-rays because they "had already been read and interpreted by a radiologist"); *Holland v. Comm'r of Soc. Sec.*, No. 4:13-cv-10295, No. 4:13-cv-10295, at *7 (E.D. Mich. 2014) ("[T]he ALJ did not improperly analyze the raw medical data of those test results, e.g., the MRI images; rather, he based his decision on the conclusions found in the test-result summaries prepared by physicians, Drs. Sehgal and Sul."). Plaintiff cites no instance in which the ALJ considered imaging or other medical evidence that had not been interpreted by a qualified physician. Second, it is the ALJ, not

a physician, who is charged with the responsibility of determining a claimant's RFC based on the evidence as a whole. 20 C.F.R. § 404.1545(a)(1), (3); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (noting that "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding").[2] As noted in *Tucker v. Commissioner of Social Security*, 775 F. App'x 220 (6th Cir. 2019), the Sixth Circuit has "[n]o bright-line rule . . . directing that medical opinions must be the building blocks of the residual functional capacity finding;" rather, "the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Id.* at 226; *see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 448–49 (6th Cir. 2020) (rejecting the plaintiff's argument that the ALJ erred in making an RFC finding without supporting medical opinion, as "[t]he effect of a claimant's conditions on her ability to work . . . is a determination expressly reserved for the ALJ"). Thus, the ALJ was not required to obtain a medical opinion before formulating Plaintiff's RFC.

## II.    ALJ's Finding of Unskilled Work

Plaintiff's remaining argument concerns the apparent inconsistency between the ALJ's finding that Plaintiff is "capable of doing a range of unskilled work" (PageID.65), and her finding that Plaintiff could perform skilled and semi-skilled work. (PageID.65–66.) Because the Court is remanding this matter to the Commissioner, it need not address the issue as it can be resolved on remand.

---

[2] In her reply, Plaintiff argues that the ALJ erred in giving great weight to Dr. Hall's opinion because the ALJ failed to consider that Dr. Hall had not reviewed the evidence submitted after she rendered her opinion. Because Plaintiff did not raise this issue in her opening brief, the Court will not consider it. Moreover, Plaintiff did not contend at the administrative level that she suffered from a mental impairment that affected her ability to sustain full-time work. (PageID.274–74.) In any event, Plaintiff may address this issue on remand.

## Conclusion

For the reasons stated above, the Commissioner's decision is **reversed and remanded** for further factual findings consistent with this Opinion pursuant to sentence four of 42 U.S.C. § 405(g).

An order consistent with this opinion will enter.

Dated: March 8, 2022                               /s/ Sally J. Berens
                                                                                            SALLY J. BERENS
                                                                                            U.S. Magistrate Judge